OPINION OF THE COURT
Roger J. Miner, J.
In this proceeding pursuant to CPLR article 78 petitioner moves to annul a determination, made after a fair hearing, that the Rensselaer County Department of Social Services properly discontinued a grant of public assistance to her for failure to submit to a blood test to establish the paternity of her youngest child.
It appears that a proceeding was commenced in Rensselaer County Family Court in 1973 wherein it was claimed that one *1001 Thomas C. was the father of the child. It appears that petitioner and her child submitted to a blood grouping test in connection with that proceeding but that petitioner refused to submit herself and her child to the further test required by reason of the contamination of the child’s blood sample. The proceeding was dismissed in the Family Court on May 27, 1976 for refusal to submit to the blood test. On June 22, 1979, at the request of the Rensselaer County Department, petitioner appeared for an interview with the support investigative unit. At that time, she was advised that she would be required to institute another paternity proceeding and that she and her child would be required to submit to another blood grouping test. It was pointed out to petitioner that the blood test was a condition for continuing eligibility for assistance. Petitioner again refused the test, indicating that she would prefer to have the case closed rather than submit to the testing, whereupon she was given notice of deletion from the assistance rolls.
Petitioner contends that the Rensselaer County Department failed in its duty to notify her of her right to claim good cause for refusing to co-operate in the blood testing. (US Code, tit 42, § 602, subd [a], par [26], cl [B]; 45 CFR 232.40; New York State Department of Social Services Administrative Directive 78-ADM-115, Jan. 16, 1979, p 4.) Petitioner claims that she had good cause for her refusal, viz.: that the previous testing caused physical harm to the child and herself; that emotional damage to the child would be caused by such a test at this time; and that the child would be adopted by the man she was about to marry. Although the fair hearing determination includes a finding that petitioner produced no medical verification that the testing would be harmful to her, she contends that no such verification is necessary. (Matter of Beverly v Fahey, 69 AD2d 919; cf. Matter of Carr v D’Elia, 72 AD2d 769.) Petitioner contends that she would have proved a good cause claim if she had been given proper notice. She also contends that she was misinformed regarding the necessity for consent to the test as a condition of eligibility, since she was required only to co-operate in filing a Family Court petition "which could eventually result in the petitioner having to consent to the blood test for her child.”
Although respondents argue that the paternity proceedings in Family Court and other "significant events” antedated the regulations and administrative directive relied upon by pe *1002 titioner, it is clear that the discontinuance of public assistance here was predicated upon petitioner’s refusal to submit to a blood test on June 22, 1979. The requirements for notice regarding the "good cause exception” were in full force and effect at that time. The failure of respondents to comply with these requirements was arbitrary and capricious. Matter of Tillman v Fahey (73 AD2d 980) is inapposite. There the court held that substantial evidence supported a determination rejecting petitioner’s claim of good cause for failure to report for work. Here, the petitioner was not given the required notice which would enable her to make the necessary showing.